THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.2:10CR864 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION ADDRESSING MOTION TO SUPPRESS |
| VICTOR ALFONSO SEBREROS-CASTRO, | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

INTRODUCTION

Defendant filed a motion to suppress (Doc. # 34) on 01/13/2011 and then filed an amended motion to suppress (Doc. # 37) on 02/28/2011 (hereinafter collectively referred to as the "motion to suppress"). An initial hearing on the motion to suppress was held 03/17/2011 and additional hearings held 03/29/2011 and 09/01/2011. The court has received complete briefing on the issue from all parties and is prepared to issue a decision on the defendant's motion to suppress.

Defendant argues that the police did not have a valid basis for stopping the vehicle on September 2, 2010; that on September 9, 2010 the defendant was in custody, and handcuffed, when he was interrogated and that the government did not properly carry its burden with respect to the Miranda warning; that the interrogation was fruit of an unlawful search and arrest; and that the search of

the West Jordan apartment where the defendant resided was based on a defective warrant which was not lawfully issued and the second search warrant was fruit of the prior illegal search of the apartment.

Relevant details surrounding the initial stop of the vehicle on September 2, 2010 include the following:

1. On September 2, 2010, Utah Highway patrol Trooper Scott Singleton received information from an FBI agent advising that a silver BMW was traveling Southbound through Tremonton, Utah and was suspected of transporting narcotics. At the time, Trooper Singleton was in Brigham City, Utah (Transcript of Evidentiary Hearing on Motion to Suppress, March 17, and March 29, 2011, Pages 8-9. Hereinafter designated as "Tr. at __.")

2. Singleton thereafter called a dog handler named Jason Jensen to ensure that the dog would be ready because of a possible car stop. (Tr. at 10)

3. While waiting for the silver BMW at a weigh station near Brigham City, Trooper Singleton received another call from the FBI indicating that the BMW had been stationary in Tremonton for 30 minutes. (Tr. at 10)

4. Trooper Singleton thereafter decided to proceed Northbound to see if the BMW had broken down. (Tr. at 11).

5. As Trooper Singleton was driving Northbound, he noticed a silver BMW pass him. He turned through the median, gave pursuit and

stopped the BMW for speeding. There were two occupants in the vehicle-the driver, Abel Beltran-Lopez, who had no identification or driver's license, and a passenger, the defendant Victor Alfonso Sebreros-Castro. Defendant Castro had a Mexican passport and a Mexican driver's license. (Tr. at 12-13)

6. Trooper Singleton received consent to search the vehicle from the driver but no contraband was discovered. The vehicle was impounded but the two occupants were allowed to leave. (Tr. at 93)

7. On September 9, 2010, UHP Trooper Adam Cleveland obtained a warrant via the e-Warrant System through the Utah Criminal Justice Information System Network.(Tr. at 31-32, 38)

8. The warrant obtained via the e-Warrant System on September 9 was captioned "Search Warrant 1055531" and had the purpose to be an arrest warrant for the two individuals located in the West Jordan Apartment. The warrant authorized the arrest of the two named individuals. (Tr. at 29, 31-32)

9. Following the arrest of the two individuals, and upon noticing a flooding toilet in the West Jordan Apartment, a second affidavit was submitted and a warrant which ended in number 551 was issued authorizing the search of the West Jordan Apartment. (Tr. at 33-34)

10. Following the execution of the search warrant, Task Force Officer Jose Flores conducted interviews at the scene. Flores asked the Defendant Castro his language preference, and subsequently continued in Spanish when Defendant Castro said he preferred to

communicate in Spanish.  Flores proceeded to read a Notice of Rights or Miranda form written in Spanish verbatim to Defendant Castro, advising him of the Miranda warnings. Defendant Castro responded that he understood his rights and was willing to answer questions regarding the investigation. (Tr. at 46-49)

I. THE TRAFFIC STOP

It is well-settled that law enforcement may stop a vehicle for a minor traffic violation and investigate further even if the subjective intent of the officer is to conduct a narcotic search so long as there is a valid basis for the traffic stop. <u>United States v. Stachowiak</u>, 521 F.3d 852, 855, (8th Cir. 2008). *See also* <u>United States v Botero-Ospina</u>, 71 F.3d 783, 787 (10th Cir. 1995) *quoting* <u>Delaware v. Prouse</u>, 440 U.S. 648, 661 (1979) (It is well-established law that officers may stop a vehicle and investigate further or issue a citation for "any one of the multitude of applicable traffic and equipment regulations.")

The evidence supports that Trooper Single was justified in stopping the defendant's vehicle for traveling 84 mph in a 75 mph zone.  This infraction was confirmed visually as well as with radar equipment. Regardless of the Trooper Singleton's subjective intent once the vehicle was stopped, or the source of the information regarding the silver BMW and its passengers and suspected contents, the stop of the vehicle was valid based on the observed speeding violation.

Defendant has called into question the credibility of Trooper Singleton and argued that compelling evidence, including testimony and video of the stop, supports finding the officer lacked a reasonable suspicion that the driver of the BMW was committing a traffic violation. The court considered the testimony and exhibits and finds, given the totality of the circumstances, the discrepancies highlighted by the defendant are insufficient to invalidate the stop.

II. THE ARREST WARRANT WAS VALID

Defendant's arrest warrant, though improperly labeled as "Search Warrant 1055531," was valid because it complied with the requirements of the fourth amendment. The requirements of the fourth amendment, "like all Constitutional requirements, are practical and not abstract." *U.S. v. Ventresca*, 380 U.S. 102, 108 (1965). Search warrants must be "tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Id*. In *State v. Bradshaw*, the Utah Supreme Court held that the police chief's failure to sign the warrant affidavit in the space provided did not invalidate the warrant because it did not prejudice the defendant. 680 P.2d 1036, 1038-39 (Utah 1984). Similarly, in *People v. Sloss*, the court determined

that a failure to properly sign or swear to an attachment referred to in the warrant did not invalidate the warrant because the attachment was "obviously incorporated into the affidavit." 109 Cal. Rptr. 583, 587-88 (Cal. App. 2d Dist. 1973).

Similarly here, the warrant was obviously intended to be an arrest warrant. A reasonable person would not infer from the warrant that the judge intended that the officers appear at the address provided to search for an arrest warrant. Rather, a reasonable person would read the warrant as an arrest warrant mistakenly formatted in the template of a search warrant. The process of the Fourth Amendment is satisfied in this case because there was probable cause for a warrant and that warrant was properly issued by the appropriate authority. Thus, defendant was arrested pursuant to a valid arrest warrant.

III. A VALID MIRANDA WARNING WAS GIVEN

The court schedule an additional evidentiary hearing on September 1, 2011 to determine whether the government could carry its burden of demonstrating that there was sufficient evidence to show that a valid Miranda warning was issued to the defendant before he was interrogated in the West Jordan Apartment on September 9, 2011. In *Miranda v. Arizona*, the Supreme Court held that an individual in custody must be informed of and waive certain rights before custodial interrogation can commence. 384 U.S. 436 (1966). The government bears the burden of proving that defendant

6

was given a valid Miranda warning. *Moll v. United States*, 413 F.2d 1233, 1237-38 (5th Cir. 1969). In *Moll*, the 5th Circuit held that where the card from which the police officers read the Miranda-type warning was not admitted into evidence at the suppression hearing, the evidence did not "demonstrate that a constitutionally adequate warning was given." *Id* at 1238. Additionally, the court stated that in meeting its burden of proof, the government may not rely on "presumptions or inferences that when police officers read to an accused from a card they are reading Miranda warnings or that what is read, without revelation of its contents, meets constitutional standards." *Id.*

The case at hand was similar to *Moll* in that no evidence was initially presented regarding the card from which police officers read Castro his rights. However, testimony given at the September 1, 2011 evidentiary hearing by Officer Jose Flores rectified that problem. The court finds the evidence presented supports the government's position that Castro was read his rights in Spanish from a card and that he then acknowledged that he understood his rights and was willing to answer questions.

The evidence presented sufficiently demonstrated that defendant was read his rights in Spanish, his preferred language, and that subsequent questioning also occurred in Spanish. (Transcript of September 1, 2011 hearing at page 8. Hereinafter referred to as "Tr. at __".) The evidence demonstrated that the

7

*Miranda* warnings were read from a form entitled "Advertencia de Derechos," which translates to "Advice of Rights." (Tr. at 7) That form was read to Defendant Sebreros-Castro word for word prior to the interview that took place on September 9, 2010. (Tr. at 9) And that form was introduced as Plaintiff's Exhibit # 3 at the September 1 hearing. (Tr. at 13). The defendant acknowledged that he understood his rights and stated that he was willing to answer questions. (Tr. at 11).

The court finds the government carried its burden with respect to the Miranda warning and that the evidence supports finding a valid Miranda warning and waiver. Defendant's arguments regarding forms and the inability of the officer to recite the exact language from memory are of no consequence and are insufficient to justify suppression of the defendant's statements.

Accordingly, the motion to suppress is denied. The initial stop of the vehicle was justified, officers had a valid arrest warrant, and defendant was properly notified of his rights pursuant to *Miranda* before any interrogation was conducted.

SO ORDERED.

DATED this 3rd day of November, 2011.

BY THE COURT:

/s/ David Sam

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT